AO 106 (Rev. 04/010) Application for Search Warrant        AUTHORIZED AND APPROVED/DATE:  Kyle Peppler 04/08/2022

# UNITED STATES DISTRICT COURT
### for the

_____WESTERN_____ DISTRICT OF _____OKLAHOMA_____

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be search* | ) |
| *Or identify the person by name and address)* | ) |
| CELLULAR DEVICE IDENTIFIED | ) |
| AS A BLUE iPHONE DAMAGED FROM | ) |
| FIRE AND SMOKE | ) |
| | ) |
| IN THE POSSESSION OF: | ) |
| HSI Oklahoma City, | ) |
| 3625 NW 56ᵗʰ St, Oklahoma City, OK | ) |

Case No: M-22-265-MB

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit of Special Agent Ryder Burpo, U.S. Department of Homeland Security, Homeland Security Investigations, which is incorporated by reference herein.

- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of [No. of Days]   days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_Applicant's signature_

Ryder Burpo
Special Agent
U.S. Department of Homeland Security,
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: _April 8, 2022_

_Judge's signature_

City and State:  Oklahoma City, Oklahoma

Amanda Maxfield Green, U.S. Magistrate Judge
_Printed name and title_

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryder Burpo, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I have been employed as a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since June 2019, and am currently assigned to Oklahoma City, Oklahoma. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.     I have arrested, interviewed, and debriefed numerous individuals who have been involved and have personal knowledge of importing, transporting, and concealing controlled substances, as well as the amassing, spending, converting, transporting, distributing, laundering and concealing of proceeds from controlled substance trafficking and smuggling.  I have testified in judicial proceedings concerning the prosecution for violations of laws related to the unlawful possession of firearms and smuggling and trafficking of contraband, including controlled substances.  I have been the affiant of numerous search warrants, including warrants authorizing the search of electronic devices.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Hosea Benson and Kacie Law and other unidentified individuals.  There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses. Based on my training and experience, I know that individuals who are involved in criminal organizations maintain books, records, receipts, notes, ledgers, and other papers relating to their clients and associates.  Furthermore, based on my training and experience, I know that these individuals often utilize phones, computers, emails, text messages, and other computer-facilitated communication software to communicate and maintain contact with their clients and associates.

Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending mobile forensics training, financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work.  In light of this training and experience, I know the following:

a.      I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, to include but not limited to, computers, tablets, cell phones, and other electronic storage

2

devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

      b.    I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics to use electronic devices to track and document financial transactions;

      c.    I am aware that individuals engaged in the sale and distribution of illegal narcotics will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

      d.    I am also aware that individuals engaged in the sale and distribution of illegal narcotics will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

      e.    I am aware that to accomplish the overall goals of individuals engaged in the sale and distribution of illegal narcotics utilize banks, financial institutions, and their attendant services, which in today's day and age, are routinely accomplished through the use of electronic devices like cellular phones that may be used in conjunction with other electronic devices and the Internet.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.    This affidavit is made in support of an application for a warrant to search a Blue iPhone damaged from fire and smoke. The iPhone is currently in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK.

3

6.     The applied-for warrant would authorize the forensic examination of the
iPhone for the purpose of identifying electronically stored data particularly described in
Attachment B.

## FACTUAL BACKGROUND

7.     On March 30, 2022, HSI Oklahoma City received a request for assistance
from Oklahoma Bureau of Narcotics (OBN). OBN Agent Darin Morgan conducted a traffic
stop based on traffic violations on Interstate Highway 40 (I-40) near mile marker 12 in
Beckham County, Oklahoma within the Western District of Oklahoma.  The driver of the
vehicle was identified as Hosea Lamar Benson. The passenger in the vehicle was identified
as Kacie Christine Law. Agent Morgan stated that during the traffic stop, he noticed a
discrepancy between the travel plans of Law and Benson.  While waiting on a K-9 to arrive
at the scene, Benson exited Agent Morgan's marked vehicle, ran to his vehicle, and drove
away. Agent Morgan attempted to stop him but returned to his vehicle and requested
assistance from Oklahoma Highway Patrol. Benson led law enforcement on a high-speed
chase for over forty (40) miles. Benson ran several roadblocks and drove through the town
of Canute, Oklahoma at speeds in excess of 130 miles per hour. Near Burns Flat,
Oklahoma, Benson's vehicle finally became disabled in an open field. Benson and Law
were arrested without incident. The rental vehicle driven by Benson and an Oklahoma
Highway Patrol vehicle caused the field to catch fire due to how hot the vehicles became
during the pursuit. Benson admitted to Troopers on the scene that he had fled because there
were seven (7) "bricks" in the car. In my training and experience, I know the term "bricks"
to be used by drug traffickers to describe kilograms of controlled substances. Troopers

4

recovered the black duffel bag from the burning car and discovered seven (7) bundles of suspected cocaine and several vacuum sealed methamphetamine packages within the duffel bag. Benson was identified as driver of the vehicle and was detained. Law was identified as the rental agreement holder of the rental vehicle and was also detained.

8.     I responded, along with HSI Task Force Officer (TFO) Cliff Kinsler, to the Washita County Jail, in Cordell, Oklahoma where we met with OBN Agent Morgan.  On March 30, 2022, at approximately 1857 hours Agent Morgan was driving east bound on I-40 near mile marker 9 in Beckham County, Oklahoma. Agent Morgan observed a black Nissan Pathfinder driving 78–80 miles per hour in the posted 75 mph zone. Agent Morgan paced the Pathfinder at 78 mph for approximately ¼ of a mile from 5–6 car lengths behind the Pathfinder with no other vehicles in between. Agent Morgan observed the vehicle catch up to a semi-truck that was driving in the inside lane. Agent Morgan observed the Pathfinder follow directly behind the semi within two car lengths. The semi changed lanes and the Pathfinder passed the semi. As the Pathfinder passed the slower semi the driver suddenly changed lanes in front of the semi into the outside lane. Agent Morgan moved closer to the Pathfinder to get the tag before stopping it. The Pathfinder had Florida tag 39AURQ. Agent Morgan checked the tag and found that the vehicle was a rental vehicle. Agent Morgan stopped the vehicle on I-40 eastbound near mile marker 12 in Beckham County. The traffic violation and the traffic stop occurred in Beckham County, in the Western District of Oklahoma.  Agent Morgan stated that he approached the vehicle and contacted the driver, Benson. Benson presented a Florida driver's license and Agent Morgan asked him about his travels.

5

9.     Agent Morgan informed Benson of the reason for the stop and directed Benson to have a seat in the front seat of his marked patrol vehicle. During this interaction, Agent Morgan asked if Benson lived in Florida. Benson stated that he did. When asked where they had picked up the rental vehicle, Benson stated California. When asked the purpose of the trip Benson stated it was to visit his dad who lived in Las Vegas, who is retired law enforcement. When asked how Benson and Law got to Los Angeles from Florida, Benson stated that they drove in another rental vehicle.

10.    During the traffic stop, Agent Morgan spoke with Law and asked where they had rented the vehicle and the purpose of their trip. Law stated that they had gone to visit Benson's dad and that the vehicle had been rented at LAX (Los Angeles International Airport) and provided a rental agreement showing it had been rented at LAX on March 29, 2022. When asked how they got to California, Law stated that they flew into LAX.

11.    Agent Morgan requested consent to search the vehicle from Benson and Law. Both denied consent. Law was left in the passenger seat of the Pathfinder and Benson was asked to come back to the marked unit to wait while Agent Morgan requested a K-9 to check the vehicle. As soon as Agent Lang, the available Oklahoma Bureau of Narcotics K-9 agent, stated he was headed to Agent Morgan's location, Benson fled to his vehicle and drove away. Agent Morgan could not safely deploy his taser to stop Benson.

12.    Agent Morgan requested assistance from Oklahoma Highway Patrol to stop the vehicle. A pursuit ensued spanning over 40 miles where Benson exceeded speeds of 130 miles per hour. Benson drove through a one lane construction site, avoided stop sticks by swerving onto the shoulder, and drove through Canute, Oklahoma at high speeds.

13.     Benson's vehicle eventually became disabled in a field at Burns Flat, Oklahoma where it caught on fire as well as the field and an Oklahoma Highway Patrol vehicle. After Benson and Law were arrested and taken to safety, Benson spontaneously admitted to the Troopers that there were seven (7) "bricks" in the vehicle and that was why he fled. Troopers entered the burning vehicle and retrieved a duffel bag containing what appeared to be cocaine and methamphetamine.

14.     The iPhone was recovered from the vehicle during the fire.

15.     A field test was conducted on the white powdery substance which produced a positive result for cocaine with an approximate weight of 7.82 kilograms.

16.     A field test was conducted on the white crystalline substance which produced a positive result for methamphetamine with an approximate weight of 6.9 kilograms.

17.     Benson was taken to the interview room at Washita County Jail, where I and TFO Kinsler introduced ourselves to Benson. We advised him of his *Miranda* rights, reading verbatim from a form. Benson signed the Miranda form and agreed to speak with us.

18.     Benson admitted he was taking the narcotics to approximately Tampa, Florida where he would call the recipient and be given a specific location to go. Benson also admitted that he was being paid approximately $10,000 to transport the narcotics. Benson stated he was to check in every couple of hours. Benson admitted that he knew there were seven "things" in the duffel bag but did not want to know what specifically. Benson refused to elaborate as to how he knew there were seven things or provide any

7

further information. Benson refused to tell investigators anything further or to further assist in the case.

19.    Law was taken to the other interview room at Washita County Jail, where TFO Kinsler and I introduced ourselves to Law. We advised her of her *Miranda* rights, reading verbatim from a form. Law signed her Miranda waiver form. When asked about the narcotics found in the vehicle, Law claimed she didn't know they were in there, stating that she thought she was going on vacation and had no idea who Benson knew that would have these narcotics. Law denied having any knowledge of the duffel bag in the vehicle.

20.    Based on my training and experience, with Law being Benson's live-in girlfriend it is unlikely that she would have no idea of what was going on. Additionally, the conflicting information she stated to investigators that she was going on a vacation, and to Agent Morgan that they were going to visit Benson's dad in Las Vegas leads investigators to believe she was being untruthful. Her stated (and conflicting) travel plans are further unbelievable since the vehicle was rented in Los Angeles on March 29, 2022, and the traffic stop took place in Oklahoma on March 30, 2022, at approximately 7 p.m. The rate of travel indicates that they were traveling rapidly to reach the area they were stopped. A straight drive with no stops from Los Angeles to Sayre, Oklahoma would take approximately 18 hours. This is not consistent with either story given by Law. The weight of the drugs being nearly 33 pounds and the size of the duffel bag would make it unlikely to go unnoticed in a vehicle a person rented and was traveling in.

21.    After arriving at the HSI office, I and other HSI agents processed and photographed the seized evidence. The suspected cocaine was weighed and tested using

the TruNarc presumptive system. The test's results were positive for the presence of cocaine and the weight exceeded 5,000 grams. We secured the drug evidence in the evidence vault. The suspected methamphetamine was weighed and tested using the TruNarc presumptive system. The tests results were positive for the presence of methamphetamine and the weight far exceeded 400 grams. We secured the drug evidence in the evidence vault.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones have the ability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

27.    There is probable cause to believe that things that were once stored on the iPhone may still be stored there, at least for the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be

9

recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery"

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

28.   *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the iPhone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the iPhone because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were

recently active.   Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

11

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the iPhone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31.   Based on the above information, I respectfully submit there is probable cause to believe the iPhone described in Attachment A contains evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.  The items listed in Attachment B are evidence of these crimes, contraband, fruits of these crimes, or property that is or has been used as the means of committing the foregoing offenses as well as other items illegally possessed.

32.   Therefore, I respectfully request that a search warrant be issued, authorizing the search of the iPhone described in Attachment A, and the seizure of the items listed in Attachment B.

RYDER BURPO
Special Agent, HSI

Subscribed to and sworn before me on April ___8th___, 2022.

AMANDA MAXFIELD GREEN
United States Magistrate Judge

13

**ATTACHMENT A**
**Item to be searched**

**Device 1.**  Blue iPhone with damage from fire and smoke.





# **ATTACHMENT B**

All records on the device described in Attachment A that relate to violations of Title 21, U.S.C. §§ 841(a)(1) and 846 including, but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of controlled substances (including names, addresses, phone numbers, emails, notes or any other identifying information);

4. Communications regarding controlled substance offenses;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Evidence related to the possession, use, storage, or purchase of any vehicles, vessels, or other items that could be used as a means of transporting controlled substances;

7. Evidence, including geolocation records, related to locations used as meeting places, places used to store proceeds, instrumentalities, controlled substances, firearms possessed or used in the furtherance of drug trafficking, or other contraband;

8. Phone call records (incoming, outgoing, missed calls), voicemail, text messages (mms/sms/picture/video/etc.), emails, video chats, direct messaging, encoded messaging, mobile applications, and all other forms of communication that could be utilized to plan and discuss the transportation, packaging, distribution, sale, or concealment of controlled substances or drug proceeds;

9. Evidence of user attribution showing who used or owned the device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames, passwords, documents, and browsing history;

10. Any digital data or material including video, audio, and still photography, lists, notes, and other text data relating to the distribution of controlled substances; and

11. Call history, contact name and numbers, voice and text messages, emails, pictures, videos, and/or other electronic data relating to drug activity.